**E-Filed 4/14/2009**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEDIMMUNE, LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>PDL BIOPHARMA, INC.,<br><br>　　　　　　　Defendant. | Case Number C 08-5590 JF (HRL)<br><br>ORDER[1] (1) DENYING MOTION TO TRANSFER; (2) DENYING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; AND (3) GRANTING MOTION FOR LEAVE TO AMEND THE COMPLAINT<br><br>[re: doc. nos. 17, 23, 28, 34, 38, 45 ] |

　　　　On December 16, 2008, Plaintiff MedImmune, LLC (MedImmune) filed a request for declaratory relief as to invalidity and contractual rights with respect to five patents owned and licensed by PDL BioPharma, Inc. ("PDL").[2]  Two days later, MedImmune filed a first amended complaint ("FAC"), which added a request for declaratory relief of non-infringement as to the same five patents.  On February 2, 2009, PDL filed a motion to transfer pursuant to 28 U.S.C. §

---

[1] This disposition is not designated for publication in the official reports.

[2] The patents in suit are 5,585,089 ("the '089 patent"), 5,693,761 ("the '761 patent"), 5,693,762 ("the '762 patent"), 6,180,370 ("the '370 patent"), and 7,022,500 ("the '500 patent") (collectively, "the PDL patents").  The PDL patents also are referred to by the parties as the "Queen patents" due to a common named inventor, Cary Queen.

1404(a) and a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On March 5, 2009, MedImmune filed a motion for leave to amend the FAC. PDL has filed partial opposition to the motion for leave to amend. For the reasons set forth below. the motion to transfer will be denied. The motion to dismiss the FAC will be denied as moot, and the motion to amend will be granted.[3]

## I. BACKGROUND

MedImmune is a Delaware corporation with its principal place of business in Gaithersburg, Maryland. Winters Decl. Ex. 1; Proposed Second Amended Complaint ("SAC") ¶ 2. MedImmune develops and produces antibody therapies, including treatments for the prevention of lower respiratory tract disease in infants caused by respiratory syncytial virus ("RSV"). SAC ¶ 2. PDL is a Delaware corporation located in Incline Village, Nevada. *Id.* ¶ 3; Winters Decl. Ex 12. In 1997, Protein Design Labs, Inc., the predecessor-in-interest of PDL, granted MedImmune's predecessor-in-interest a license to develop, manufacture, and sell anti-RSV antibodies that would otherwise infringe valid claims of certain patents owned by PDL, including the Queen patents, in exchange for royalty payments (the "License Agreement"). The License Agreement is governed by California law. *See* License Agreement § 8.05.

During the 1990s, MedImmune developed the humanized antibody palivizumab for the treatment of RSV. Palivizumab has been sold under the trade name Synagis® since it received FDA approval in 1998. MedImmune has made regular royalty payments to PDL on sales of Synagis® pursuant to the terms of the License Agreement. MedImmune has developed a second anti-RSV antibody, motavizumab, which has completed Phase III trials and is the subject of a pending Biologics License Application before the FDA. No royalties have been paid to PDL on this second product, although MedImmune has produced commercial quantities of motavizumab in anticipation of FDA approval.

While the parties dispute the extent to which PDL still has a presence in this district, it is undisputed that PDL was headquartered in Redwood City, California until December 2008. *See*

---

[3] PDL informed the Court that it voluntarily would withdraw its motion to dismiss if the Court denied the motion to transfer. *See* Civ. L.R. 7-7(e).

SAC ¶ 3. In an 8-K filing submitted to the Securities and Exchange Commission on December 8, 2008, PDL publicly announced a plan to spin off its biotechnology operations to a new entity (which would be located in Redwood City) and relocate to Nevada before the end of the year. *See* Winters Decl. Ex. 12. PDL alleges that once MedImmune learned that the spin-off would be effective as of December 17, 2008, it rushed to file a complaint on December 16. MedImmune filed the FAC two days later on December 18, 2008.

      PDL argues that transfer is appropriate largely because of litigation currently pending in the District of Delaware. On March 16, 2007, PDL filed suit against Alexion Pharmaceuticals, Inc. ("Alexion") in the District of Delaware, alleging infringement of three of the five patents at issue in the instant action. PDL thus contends that the Delaware district court already has invested considerable judicial resources and is familiar with the complex technology and relevant prior art. In addition, the Delaware district court has held a claim construction hearing, and it issued an order construing the disputed claim terms on July 29, 2008. *PDL Biopharma, Inc. v. Alexion Pharm., Inc.*, 568 F. Supp. 2d 445 (D. Del. 2008). On December 31, 2008, Alexion and PDL settled. Pursuant to the settlement, Alexion conceded that PDL's patents were valid and agreed to pay PDL $25 million for rights to the accused product as well as a 4% royalty on certain future humanized antibodies. *See* Winters Decl. Ex. 19.[4]

      PDL also argues that transfer is appropriate because both PDL and MedImmune are Delaware corporations and MedImmune's headquarters is located within one hundred miles of the proposed venue, as are certain MedImmune employees (both former and current) who were involved in the development of the MedImmune antibodies at issue. PDL further asserts that the parties were engaged in good-faith negotiations to settle their dispute, and MedImmune chose to forum-shop by filing suit here unexpectedly just before PDL completed its move to Nevada. In response, MedImmune points out that five of the six named inventors for the PDL patents are located in this district, as are the attorneys who prosecuted the patents in suit. MedImmune also

---

[4] MedImmune argues that the Delaware litigation is effectively over. PDL acknowledges that the action is stayed but points out that it still is pending on the docket contingent on Alexion's satisfactory performance of certain obligations related to the settlement.

3

Case No. C 08-5590 JF (HRL)
ORDER DENYING MOTION TO TRANSFER ETC.
(JFLC1)

contests the practical significance of PDL's relocation, and argues that PDL's public filings indicate that its administrative, information technology, legal, and human resources services still are based at its former Redwood City facility.  Finally, MedImmune argues that the parties' dispute over the terms of the License Agreement is a central rather than ancillary issue, and thus the choice of law provision in the agreement favors a California forum.

## II. DISCUSSION

### A. Motion to Transfer

For the convenience of parties and witnesses and in the interest of justice, the Court may transfer any civil action to any other district or division where it may have been brought.  28 U.S.C. § 1404(a).  The law of the regional circuit applies when considering a motion to transfer pursuant to § 1404.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (2008) ("Because this petition does not involve substantive issues of patent law, this court applies the laws of the regional circuit in which the district court sits").  In the Ninth Circuit, a motion for transfer pursuant to § 1404(a) lies within the discretion of the district court and depends on the facts of each particular case.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  The Court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 843 (9th Cir. 1986).  Such factors include:  (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any.  *Jones*, 211 F.3d at 498-99.  *See also Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904-05 (Fed. Cir. 2008) ("The convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice must be evaluated to ensure

4

the case receives attention in the most appropriate forum.").[5]  The moving party bears the burden of showing that transfer is appropriate.  *Jones*, 211 F.3d at 499.

PDL argues that the Delaware district court's familiarity with three of the five patents in suit is a decisive factor that should compel transfer.  PDL cites *Zoltar Satellite Systems, Inc. v. LG Electronics Mobile Communications Co.*, 402 F. Supp. 2d 731 (E.D. Tex. 2005), in which the Texas district court found that pre-existing litigation before Judge James Ware in this district involving the same patents warranted transfer.  *See id.* at 737.  However, in *Zoltar* the judicial investment of time and resources in the proposed transferee court was significantly greater than that of the Delaware district court in the instant case.  For example, Judge Ware had not only conducted a claim construction hearing and issued a claim construction order but also had ruled on motions for summary judgment and conducted a three-week jury trial.  *Id*. at 736.  In addition, certain post-trial issues still were being actively litigated at the time the motion to transfer was filed.  *Id.* at 734.

Moreover, as the Federal Circuit observed in *Micron*, the fact that the proposed transferee court previously has hosted litigation involving some of the patents at issue is not dispositive. *See* 518 F.3d at 905.  *See also ICU Med., Inc. v. Rymed Techs., Inc.*, No. 07-468, 2008 WL 205307, at *5 (D. Del. Jan. 23, 2008) (proposed transferee court's familiarity with patents is a factor to consider but "the Court does not find that factor to be dispositive."); *ConnecTel, LLC v. Cisco Sys., Inc.*, No. 2:04-CV-396, 2005 WL 366966, at *3 (E.D. Tex. Feb. 16, 2005) ("The present case involves a different defendant and different products, so it is not in the interest of judicial economy to transfer this case.").  In contrast to *Zoltar*, the litigation in Delaware has not progressed beyond the issuance of a non-preclusive claim construction order, and the case currently is stayed (and will be dismissed eventually unless the contingent settlement agreement fails).  Even if the instant action were transferred the Delaware district court, MedImmune still would be entitled to full briefing and argument because it is not collaterally estopped by the prior claim construction ruling.  At the same time, if this Court were to retain the action here, it would

---

[5] The Court notes that this action might have been brought in the district of Delaware because both parties are Delaware corporations.  *See* 28 U.S.C. § 1391(c).

accord deference to the prior claim construction ruling as persuasive authority.  *See Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993).

To the extent that the pre-existing Delaware litigation favors transfer, the location of certain key witnesses and the California state law issues in the instant case equally favor retention.  Whether MedImmune prevails largely will be determined by whether the PDL patents are valid, as reflected by the fact that MedImmune's original complaint did not contain any assertions of non-infringement and MedImmune has made royalty payments to PDL for a number of years.[6]  Live testimony from the inventors and the prosecuting attorneys will be essential to the invalidity analysis.  In addition, the License Agreement is governed by California law, and as set forth in further detail below, the Court's interpretation of certain contractual language will determine the royalty rate MedImmune is obligated to pay to PDL.[7]  While such a factor is not dispositive, it nonetheless weighs against transfer.

The remaining considerations largely cancel each other out.  While MedImmune's employees are located in Maryland, this Court can compel MedImmune to produce those witnesses at trial.  *See Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1451 (9th Cir. 1990).  Transfer to Delaware would require travel by PDL employees.  The accused product was designed in Maryland but the patents were prosecuted here.  While a district court may disregard the plaintiff's choice of forum where the plaintiff's suit is the result of forum-shopping, *Alltrade Inc., v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991), it is not clear that MedImmune's choice of forum was made in bad faith.  *See id.*  Accordingly, the motion to transfer will be denied.

B.  Motion to Amend

Under Rule 15(a), "leave [to amend] shall be freely granted when justice so requires."  "This policy is 'to be applied with extreme liberality.'"  *Eminence Capital, LLC v. Aspeon, Inc.*,

---

[6] Both the FAC and the proposed SAC do seek declaratory relief as to non-infringement.

[7] At oral argument, counsel for MedImmune represented that the contractual issue supersedes the patent dispute because if MedImmune prevails on its contract claim, it would no longer challenge the validity of the PDL patents or assert claims of non-infringement.

6

316 F.3d 1048, 1051 (9th Cir. 2003 ) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 ( 9th Cir.2001)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Forman v. Davis*, 371 U.S. 178, 182 (1962).

MedImmune seeks leave to amend the FAC to add certain contractual claims. PDL argues that the proposed amendment is designed to tip the Court's transfer analysis. PDL also asserts that the amendment should be denied for futility under the applicable statute of limitations because it relates back to a separate license agreement between Genentech Inc. ("Genentech") and PDL, which was signed in December 2003. In response, MedImmune asserts that the critical event was PDL's settlement in January 2009 with Alexion, which may have triggered certain rights and obligations in the License Agreement, depending on the licensing terms of the earlier PDL/Genentech agreement.

It would be premature for the Court to engage in extensive interpretation of the License Agreement, the PDL/Alexion license or the PDL/Genentech license at this stage of the litigation. While PDL ultimately may be correct with respect to the statute of limitations bar, it has not shown that the proposed amendment is necessarily futile. In addition, there is no evidence of bad faith or undue delay, as MedImmune contacted PDL to request information with respect to the terms of both the Alexion and Genentech license agreements shortly after the Alexion settlement was announced. After discussions to obtain this information stalled, MedImmune filed its motion to amend the FAC. Accordingly, leave to amend will be granted.

Case No. C 08-5590 JF (HRL)
ORDER DENYING MOTION TO TRANSFER ETC.
(JFLC1)

### III.  ORDER

Good cause therefor appearing, PDL's motion to transfer to the district of Delaware is DENIED, and MedImmune's motion for leave to amend is GRANTED.

DATED:  April 14, 2009

_____
JEREMY FOGEL
United States District Judge

1   This Order has been served upon the following persons:

2   Aaron P. Maurer    amaurer@wc.com

3

4   Gerson Avery Zweifach    gzweifach@wc.com

5   Jeffrey E. Faucette    jfaucette@hrice.com, gprice@howardrice.com, jrustice@howardrice.com

6

7   Paul B. Gaffney    pgaffney@wc.com

8   Vernon Michael Winters    vern.winters@weil.com, nettie.asiasi@weil.com

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28