JEFFREY E. FAUCETTE (No. 193066)
Email: jfaucette@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: 415/434-1600
Facsimile: 415/217-5910

GERSON A. ZWEIFACH
PAUL B. GAFFNEY
AARON P. MAURER
DAVID I. BERL (No. 211761)
WILLIAMS & CONNOLLY LLP
225 Twelfth Street, NW
Washington, District of Columbia 20005-5901
Telephone: 202/434-5000
Facsimile: 202/434-5029

ELLIOT M. OLSTEIN
CARELLA, BYRNE, BAIN, GILFILLAN,
    CECCHI, STEWART & OLSTEIN, P.C.
Five Becker Farm Road
Roseland, New Jersey 07068-1739
Telephone: 973/994-1700
Facsimile: 973/994-1744

Attorneys for Plaintiff
MEDIMMUNE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEDIMMUNE, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>PDL BIOPHARMA, INC.,<br><br>  Defendant. | No. CV 08 5590 JF<br><br>Action Filed: December 16, 2008<br><br>SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT AND INVALIDITY AND CONTRACTUAL RIGHTS<br><br>Trial Date: None Set |

**PUBLIC VERSION**

# SECOND AMENDED COMPLAINT

Plaintiff MedImmune, LLC (f/k/a MedImmune, Inc.) ("MedImmune"), by its attorneys, for its Complaint, alleges as follows:

1. This is an action for declaratory relief pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §2201. MedImmune seeks a declaration that U.S. Patent Nos. 5,585,089, 5,693,761, 5,693,762, 6,180,370, and 7,022,500 are invalid and/or not infringed by MedImmune's antibody products palivizumab and motavizumab, and that MedImmune owes no payments, or alternatively reduced payments, under a patent license agreement with PDL BioPharma, Inc. (f/k/a Protein Design Labs, Inc.) ("PDL"), assignee of the patents.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff MedImmune is a biotechnology company with its principal place of business in Gaithersburg, Maryland. MedImmune uses biotechnology to develop and produce antibody therapies, including for the prevention of serious lower respiratory tract disease caused by respiratory syncytial virus ("RSV") in vulnerable infants.

3. PDL, a biopharmaceutical company, is the assignee of United States Patent Nos. 5,585,089 ("the '089 patent"), 5,693,761 ("the '761 patent"), 5,693,762 ("the '762 patent"), 6,180,370 ("the '370 patent") and 7,022,500 ("the '500 patent") (collectively, "the PDL patents"), entitled Humanized Immunoglobulins, directed to, *inter alia*, certain humanized antibodies and methods of preparing such antibodies. Since its founding until just recently, PDL had its principal place of business in this district, most recently at 1400 Seaport Blvd. in Redwood City. After this lawsuit was filed, PDL nominally relocated to Incline Village, Nevada, where the taxation rates are lower, although the company's administrative, financial, tax, accounting, information technology, legal, and human resources services are still conducted at its former Redwood City facility.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 1331, 1337, 1338(a) and 2201. This Court has jurisdiction over any state law claims asserted hereunder pursuant to 28 U.S.C. Section 1367.

5. This Court has personal jurisdiction over Defendant PDL. The company has had its principal place of business in this judicial district for many years and still has a number of its important corporate functions performed here. On information and belief, PDL has substantial, continuous and systematic contacts with this District, including regularly transacting business within the District.

6. Venue is proper in this district pursuant to 28 U.S.C. Sections 1391 and 1400(b), because PDL is subject to personal jurisdiction in this district and resided in this district when this action commenced and because a substantial part of the events and/or omissions giving rise to the claims in this lawsuit occurred in this District.

## BACKGROUND

7. In 1997, Protein Design Labs, Inc., the predecessor-in-interest of PDL granted the predecessor-in-interest of MedImmune a license to develop, manufacture, and sell anti-RSV antibodies that would otherwise infringe a valid claim of certain patents of PDL, including the PDL patents, ███████████████████████████████████ ███████████████████████████████████ (hereinafter, "License Agreement").

8. In the 1990s MedImmune developed the humanized antibody palivizumab for the treatment of RSV. Palivizumab received FDA approval in 1998 and has been sold since then under the trade name Synagis®. Since then MedImmune has made regular royalty payments to PDL under the License Agreement on sales of Synagis®.

9. MedImmune has developed a next-generation anti-RSV antibody, motavizumab. A Biologic License Application to market motavizumab for the prevention of lower respiratory tract disease caused by RSV was filed by MedImmune in January 2008 and accepted for filing as a standard application in March 2008. MedImmune has prepared commercial quantities of motavizumab and expects to initiate marketing of this product upon FDA approval.

10. Prior to the initiation of this lawsuit, MedImmune informed PDL in writing that MedImmune was contesting whether Synagis® or motavizumab infringed any valid claim of

1  the PDL patents. PDL has taken the position that both Synagis® and motavizumab infringe
2  the PDL patents.



11  12. In January 2009, PDL announced that it had licensed the PDL patents to Alexion
12  Pharmaceuticals, Inc., which manufactures and distributes the humanized antibody Soliris®.
13  The license, executed as part of the settlement of patent litigation between the companies,
14  requires Alexion to make a one-time payment of $25 million but going forward grants the
15  company a royalty free-license to manufacture and distribute Soliris®.

**COUNT I**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT.**

19  13. MedImmune incorporates each of the preceding paragraphs as if fully set forth
20  herein.
21  14. An actual controversy and exists between the parties concerning whether, absent
22  the License Agreement, Synagis® and motavizumab infringe the PDL patents.
23  15. The unlicensed commercial manufacture, use, offer for sale, sale and/or
24  importation into the United States of Synagis®, do not infringe United States Patent No.
25  5,585,089 ("the '089 patent"), or contribute to or induce infringement by others. Synagis®
26  does not meet, either literally or, if applicable, under the doctrine of equivalents, at least the
27  limitations of the claims of the '089 patent that recite (1) the requisite affinity with which an
28  immunoglobulin must bind an antigen, (2) the characteristics of the donor residue that

replaces an acceptor residue and (3) that the CDRs be from a donor immunoglobulin.

16. The unlicensed commercial manufacture, use, offer for sale, sale and/or importation into the United States of Synagis® do not infringe United States Patent No. 5,693,761 ("the '761 patent"), or contribute to or induce infringement by others. Synagis® is encoded by polynucleotides that do not meet, either literally or, if applicable, under the doctrine of equivalents, at least the limitations of the claims of the '761 patent that recite (1) that the CDRs be from a donor immunoglobulin, (2) the requisite affinity with which an encoded immunoglobulin must bind an antigen, (3) the particular antigen to be bound, (4) the particular polynucleotide sequences, (5) a consensus sequence or (6) the characteristics of the donor residue that replaces an acceptor residue. Synagis® likewise is not made using vectors or cell lines comprising polynucleotides that contain, *inter alia*, the claim limitations recited herein.



17. The unlicensed commercial manufacture, use, offer for sale, sale and/or importation into the United States of Synagis® do not infringe United States Patent No. 5,693,762 ("the '762 patent"), or contribute to or induce infringement by others. Synagis® does not meet, either literally or, if applicable, under the doctrine of equivalents, at least the limitations of the claims of the '762 patent that recite (1) the requisite affinity with which an immunoglobulin must bind an antigen and (2) the characteristics of the donor residue that replaces an acceptor residue, (3) that the CDRs be from a donor immunoglobulin and (4) a consensus sequence. The methods for producing a humanized immunoglobulin, to the extent claimed in the '762 patent, were not infringed by the production of Synagis®, *inter alia*, for the reasons set forth in this paragraph and for the reasons set forth herein with respect to the method claims of the PDL patents.

18. The unlicensed commercial manufacture, use, offer for sale, sale and/or importation into the United States of Synagis® do not infringe United States Patent No. 6,180,370 ("the '370 patent"), or contribute to or induce infringement by others. The design of Synagis® was and is not subject to the '370 patent's claims to methods of producing humanized immunoglobulins, inter alia because Synagis® was produced by a method that

did not meet, either literally or, if applicable, under the doctrine of equivalents, at least the limitations of the claims of the '370 patent that recite (1) comparing the sequence of a donor immunoglobulin heavy chain variable region against a collection of sequences of human heavy chain variable regions, (2) selecting a human heavy chain variable region from a collection of human heavy chain variable regions to provide an acceptor heavy chain variable region, (3) the requisite affinity with which the produced immunoglobulin must bind an antigen, (4) the characteristics of the donor residue that replaces an acceptor residue and (5) that the CDRs be from a donor immunoglobulin.

19. The unlicensed commercial manufacture, use, offer for sale, sale and/or importation into the United States of Synagis® do not infringe United States Patent No. 7,022,500 ("the '500 patent"), or contribute to or induce infringement by others. Synagis® does not meet, either literally or, if applicable, under the doctrine of equivalents, at least the limitations of the claims of the '500 patent that recite (1) that the CDRs be from a donor immunoglobulin, (2) the requisite affinity with which an encoded immunoglobulin must bind an antigen, (3) the particular polynucleotide sequences, (4) the specified amino acid replacements or (5) the characteristics of the donor residue that replaces an acceptor residue. The methods for producing a humanized immunoglobulin, to the extent claimed in the '500 patent, were not infringed by the production of Synagis®, *inter alia*, for the reasons set forth in this paragraph and with respect to the method claims of the '370 patent.

20. The unlicensed commercial manufacture, use, offer for sale, sale and/or importation into the United States of motavizumab will not infringe the '089 patent or contribute to or induce infringement by others. Motavizumab does not meet, either literally or, if applicable, under the doctrine of equivalents, at least the limitations of the claims of the '089 patent that recite (1) the requisite affinity with which an immunoglobulin must bind an antigen, (2) the characteristics of the donor residue that replaces an acceptor residue and (3) that the CDRs be from a donor immunoglobulin.

21. The unlicensed commercial manufacture, use, offer for sale, sale and/or importation into the United States of motavizumab will not infringe the '761 patent, or

contribute to or induce infringement by others. Motavizumab is encoded by polynucleotides that do not meet, either literally or, if applicable, under the doctrine of equivalents, at least the limitations of the claims of the '761 patent that recite (1) that the CDRs be from a donor immunoglobulin, (2) the requisite affinity with which an encoded immunoglobulin must bind an antigen, (3) the particular antigen to be bound, (4) the particular polynucleotide sequences, (5) a consensus sequence, (6) the characteristics of the donor residue that replaces an acceptor residue and (7) a donor immunoglobulin heavy chain. Motavizumab likewise is not made using vectors or cell lines comprising polynucleotides that contain, inter alia, the claim limitations recited herein.

22. The unlicensed commercial manufacture, use, offer for sale, sale and/or importation into the United States of motavizumab will not infringe the '762 patent, or contribute to or induce infringement by others. Motavizumab does not meet, either literally or, if applicable, under the doctrine of equivalents, at least the limitations of the claims of the '762 patent that recite (1) the requisite affinity with which an immunoglobulin must bind an antigen, (2) the characteristics of the donor residue that replaces an acceptor residue, (3) that the CDRs be from a donor immunoglobulin and (4) a consensus sequence or (5) a donor immunoglobulin heavy chain. The methods for producing a humanized immunoglobulin, to the extent claimed in the '762 patent, were not infringed by the production of motavizumab, inter alia for the reasons set forth herein with respect to the method claims of the PDL patents.

23. The unlicensed commercial manufacture, use, offer for sale, sale and/or importation into the United States of motavizumab will not infringe the '370 patent, or contribute to or induce infringement by others. The design of motavizumab was and is not subject to the '370 patent's claims to methods of producing humanized immunoglobulins, inter alia because motavizumab was produced by a method that did not meet, either literally or, if applicable, under the doctrine of equivalents, at least the limitations of the claims of the '370 patent that recite (1) comparing the sequence of a donor immunoglobulin heavy chain variable region against a collection of sequences of human heavy chain variable regions,

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT    CV 08 5590
-6-

(2) selecting a human heavy chain variable region from a collection of human heavy chain variable regions to provide an acceptor heavy chain variable region, (3) the requisite affinity with which the produced immunoglobulin must bind an antigen, (4) the characteristics of the donor residue that replaces an acceptor residue, (5) that the CDRs be from a donor immunoglobulin and (6) a donor immunoglobulin heavy chain.

24. The unlicensed commercial manufacture, use, offer for sale, sale and/or importation into the United States of motavizumab will not infringe the '500 patent, or contribute to or induce infringement by others. Motavizumab does not meet, either literally or, if applicable, under the doctrine of equivalents, at least the limitations of the claims of the '500 patent that recite (1) that the CDRs be from a donor immunoglobulin, (2) the requisite affinity with which an encoded immunoglobulin must bind an antigen, (3) the particular polynucleotide sequences, (4) the specified amino acid replacements, (5) the characteristics of the donor residue that replaces an acceptor residue and (6) a donor immunoglobulin heavy chain. The methods for producing a humanized immunoglobulin, to the extent claimed in the '500 patent, were not infringed by the production of motavizumab, *inter alia*, for the reasons set forth in this paragraph and with respect to the method claims of the PDL patents.

25. MedImmune hereby seeks a declaratory judgment that neither Synagis® nor motavizumab infringe any claim of any of the PDL patents.

## COUNT II
## DECLARATORY JUDGMENT OF INVALIDITY.

26. MedImmune incorporates each of the preceding paragraphs as if fully set forth herein.

27. United States Patent No. 5,585,089 is invalid under 35 U.S.C. Sections 101, 102, 103, 112, *et seq.*, and/or under the judicially created doctrine of obviousness type double patenting. More specifically, the claims of the '089 patent are invalid under at least 35 U.S.C. Sections 102 and/or 103. By way of non-limiting and non-exclusive examples, the

following publications, individually or in combination, render the claims of the '089 patent invalid: Bindon, Importance of Antigen Specificity for Complement-Mediated Lysis by Monoclonal Antibodies, Eur. J. Immunol. 1988, 18:1507-1514; Reichmann, Reshaping Human Antibodies for Therapy, Nature, Vol. 332, 323-327 (1988); Panka, Variable Region Framework Differences Result in Decreased or Increased Affinity of Variant Anti-digoxin Antibodies, Proc. Natl. Acad. Sci. USA, Vol. 85, 3080-3084 (1988); Chothia, Canonical Structures for the Hypervariable Regions of Immunoglobulins, J. Mol. Biol. 196, 901 (1987); Uchiyama, A Monoclonal Antibody (anti-Tac) reactive with activated and functionally mature human T-cells, J. Immunol. 126:1393-97 (1981); Verhoeyen, Reshaping Human Antibodies: Grafting an Antilysozyme Activity, Science, Vol. 239, 1534-1536 (1988); EPO Patent Publication Number 0239400 A2; EPO Patent Application No. 0266663; British Patent No. GB 2188941; United States Patent No. 5,198,359. The claims of the '089 patent also are invalid under, *inter alia*, 35 U.S.C. Section 112, first paragraph, because the specification does not describe the full scope of the claimed immunoglobulins, does not enable a person of ordinary skill in the art to make and use the claimed immunoglobulins without undue experimentation, and does not disclose the applicant's best mode for preparing the claimed immunoglobulins. The claims of the '089 patent also are invalid under, *inter alia*, 35 U.S.C. Section 112, second paragraph, because they do not distinctly claim the purportedly inventive subject matter.

28. United States Patent No. 5,693,761 is invalid under 35 U.S.C. Sections 101, 102, 103, 112, *et seq.*, and/or under the judicially created doctrine of obviousness type double patenting. More specifically, the claims of the '761 patent are invalid under at least 35 U.S.C. Sections 102 and/or 103. By way of non-limiting and non-exclusive examples, the following publications, individually or in combination, render the claims of the '761 patent invalid: Bindon, Importance of Antigen Specificity for Complement-Mediated Lysis by Monoclonal Antibodies, Eur. J. Immunol. 1988, 18:1507-1514; Reichmann, Reshaping Human Antibodies for Therapy, Nature, Vol. 332, 323-327 (1988); Panka, Variable Region Framework Differences Result in Decreased or Increased Affinity of Variant Anti-digoxin

Antibodies, Proc. Natl. Acad. Sci. USA, Vol. 85, 3080-3084 (1988); Chothia, Canonical Structures for the Hypervariable Regions of Immunoglobulins, J. Mol. Biol. 196, 901 (1987); Uchiyama, A Monoclonal Antibody (anti-Tac) reactive with activated and functionally mature human T-cells, J. Immunol. 126:1393-97 (1981); Verhoeyen, Reshaping Human Antibodies: Grafting an Antilysozyme Activity, Science, Vol. 239, 1534-1536 (1988); EPO Patent Publication Number 0239400 A2; EPO Patent Application No. 0266663; British Patent No. GB 2188941; United States Patent No. 5,198,359. The claims of the '761 patent also are invalid under, *inter alia*, 35 U.S.C. Section 112, first paragraph, because the specification does not describe the full scope of the claimed polynucleotides, does not enable a person of ordinary skill in the art to make and use the claimed polynucleotides without undue experimentation, and does not disclose the applicant's best mode for preparing the claimed polynucleotides. The claims of the '761 patent also are invalid under, inter alia, 35 U.S.C. Section 112, second paragraph, because they do not distinctly claim the purportedly inventive subject matter.

29. United States Patent No. 5,693,762 is invalid under 35 U.S.C. Sections 101, 102, 103, 112, *et seq.*, and/or under the judicially created doctrine of obviousness type double patenting. More specifically, the claims of the '762 patent are invalid under at least 35 U.S.C. Sections 102 and/or 103. By way of non-limiting and non-exclusive examples, the following publications, individually or in combination, render the claims of the '762 patent invalid: Bindon, Importance of Antigen Specificity for Complement-Mediated Lysis by Monoclonal Antibodies, Eur. J. Immunol. 1988, 18:1507-1514; Reichmann, Reshaping Human Antibodies for Therapy, Nature, Vol. 332, 323-327 (1988); Panka, Variable Region Framework Differences Result in Decreased or Increased Affinity of Variant Anti-digoxin Antibodies, Proc. Natl. Acad. Sci. USA, Vol. 85, 3080-3084 (1988); Chothia, Canonical Structures for the Hypervariable Regions of Immunoglobulins, J. Mol. Biol. 196, 901 (1987); Uchiyama, A Monoclonal Antibody (anti-Tac) reactive with activated and functionally mature human T-cells, J. Immunol. 126:1393-97 (1981); Verhoeyen, Reshaping Human Antibodies: Grafting an Antilysozyme Activity, Science, Vol. 239, 1534-1536

(1988); EPO Patent Publication Number 0239400 A2; EPO Patent Application No. 0266663; British Patent No. GB 2188941; United States Patent No. 5,198,359. The claims of the '762 patent also are invalid under, *inter alia*, 35 U.S.C. §112, first paragraph, because the specification does not describe the full scope of the claimed immunoglobulins and methods of producing immunoglobulins, does not enable a person of ordinary skill in the art to make and use the claimed immunoglobulins and practice the claimed methods of producing immunoglobulins without undue experimentation, and does not disclose the applicant's best mode for preparing the claimed immunoglobulins. The claims of the '762 patent also are invalid under, *inter alia*, 35 U.S.C. Section 112, second paragraph, because they do not distinctly claim the purportedly inventive subject matter.

30. United States Patent No. 6,180,370 is invalid under 35 U.S.C. Sections 101, 102, 103, 112, *et seq.*, and/or under the judicially created doctrine of obviousness type double patenting. More specifically, the claims of the '370 patent are invalid under at least 35 U.S.C. Sections 102 and/or 103. By way of non-limiting and non-exclusive examples, the following publications, individually or in combination, render the claims of the '370 patent invalid: Bindon, Importance of Antigen Specificity for Complement-Mediated Lysis by Monoclonal Antibodies, Eur. J. Immunol. 1988, 18:1507-1514; Reichmann, Reshaping Human Antibodies for Therapy, Nature, Vol. 332, 323-327 (1988); Panka, Variable Region Framework Differences Result in Decreased or Increased Affinity of Variant Anti-digoxin Antibodies, Proc. Natl. Acad. Sci. USA, Vol. 85, 3080-3084 (1988); Chothia, Canonical Structures for the Hypervariable Regions of Immunoglobulins, J. Mol. Biol. 196, 901 (1987); Uchiyama, A Monoclonal Antibody (anti-Tac) reactive with activated and functionally mature human T-cells, J. Immunol. 126:1393-97 (1981); Verhoeyen, Reshaping Human Antibodies: Grafting an Antilysozyme Activity, Science, Vol. 239, 1534-1536 (1988); EPO Patent Publication Number 0239400 A2; EPO Patent Application No. 0266663; British Patent No. GB 2188941; United States Patent No. 5,198,359. The claims of the '370 patent also are invalid under, *inter alia*, 35 U.S.C. Section 112, first paragraph, because the specification does not describe the full scope of the claimed immunoglobulins

and methods of producing immunoglobulins, does not enable a person of ordinary skill in the art to make and use the claimed immunoglobulins and practice the claimed methods of producing immunoglobulins without undue experimentation, and does not disclose the applicant's best mode for preparing the claimed immunoglobulins. The claims of the '370 patent also are invalid under, *inter alia*, 35 U.S.C. Section 112, second paragraph, because they do not distinctly claim the purportedly inventive subject matter.

31. United States Patent No. 7,022,500 is invalid under 35 U.S.C. Section 101, 102, 103, 112, et seq. and/or under the judicially created doctrine of obviousness type double patenting. More specifically, the claims of the '500 patent are invalid under at least 35 U.S.C. Sections 102 and/or 103. By way of non-limiting and non-exclusive examples, the following publications, individually or in combination, render the claims of the '500 patent invalid: Bindon, Importance of Antigen Specificity for Complement-Mediated Lysis by Monoclonal Antibodies, Eur. J. Immunol. 1988, 18:1507-1514; Reichmann, Reshaping Human Antibodies for Therapy, Nature, Vol. 332, 323-327 (1988); Panka, Variable Region Framework Differences Result in Decreased or Increased Affinity of Variant Anti-digoxin Antibodies, Proc. Natl. Acad. Sci. USA, Vol. 85, 3080-3084 (1988); Chothia, Canonical Structures for the Hypervariable Regions of Immunoglobulins, J. Mol. Biol. 196, 901 (1987); Uchiyama, A Monoclonal Antibody (anti-Tac) reactive with activated and functionally mature human T-cells, J. Immunol. 126:1393-97 (1981); Verhoeyen, Reshaping Human Antibodies: Grafting an Antilysozyme Activity, Science, Vol. 239, 1534-1536 (1988); EPO Patent Publication Number 0239400 A2; EPO Patent Application No. 0266663; British Patent No. GB 2188941; United States Patent No. 5,198,359. The claims of the '500 patent also are invalid under, *inter alia*, 35 U.S.C. Section 112, first paragraph, because the specification does not describe the full scope of the claimed immunoglobulins and methods of producing immunoglobulins, does not enable a person of ordinary skill in the art to make and use the claimed immunoglobulins and practice the claimed methods of producing immunoglobulins without undue experimentation, and does not disclose the applicant's best mode for preparing the claimed immunoglobulins. The claims of the '500

patent also are invalid under, *inter alia*, 35 U.S.C. Section 112, second paragraph, because they do not distinctly claim the purportedly inventive subject matter.

## COUNT III
## DECLARATORY JUDGMENT OF CONTRACTUAL RIGHTS.

32. MedImmune incorporates each of the preceding paragraphs as if fully set forth herein.

33. Royalties are owed under the License Agreement for Synagis® and motavizumab manufactured and sold in the U.S. only if the development, importation, manufacture, use, or sale of Synagis® and/or motavizumab would, but for the License Agreement, infringe a valid claim of the PDL patents.

34. Because the parties dispute whether Synagis® and motavizumab infringe the PDL patents and whether the PDL patents are valid, an actual controversy exists between the parties concerning the rights and obligations of MedImmune under the terms of the License Agreement.

35. MedImmune has no obligation to make payments to PDL under the License Agreement pertaining to Synagis® or motavizumab that is manufactured and sold, because Synagis® and motavizumab do not infringe any valid claim of the PDL patents. The basis for invalidity of the PDL Patents arises under the patent laws of the United States, 35 U.S.C. Sections 101, 102, 103, 112, *et seq.*, and/or the judicially created doctrine of obviousness type double patenting.

36. MedImmune hereby seeks a declaratory judgment that it owes no payments under the License Agreement pertaining to Synagis® or motavizumab that is manufactured and sold in the United States, and that any payments made to PDL under the License Agreement, post-dating this Complaint, based on sales of Synagis® or motavizumab that is manufactured, sold and used in the United States, are subject to the equitable powers of the Court.

[Redacted]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MedImmune requests that judgment be entered in favor of MedImmune and against PDL and requests the following relief:

(a) A declaration that MedImmune's development, manufacture, use, offer for sale, sale and/or importation into the United States of its Synagis® and motavizumab products do not infringe any valid and enforceable claim of the PDL patents, or contribute to or induce infringement by others or;

(b) A declaration that the PDL patents are invalid under 35 U.S.C. Sections 101, 102, 103, 112, *et seq.*, and/or the judicially created doctrine of obviousness type double patenting;

(c) A declaration that PDL is not entitled to any royalties on sales of Synagis® and motavizumab that is manufactured and sold in the United States because the PDL

patents are invalid and/or because MedImmune's development, manufacture, use, offer for sale, sale and/or importation into the United States of either product does not infringe any valid claim of the PDL patents;

[REDACTED]

(e) A declaration that this in an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. Section 285;

(f) Costs and expenses in this action; and

(g) Such further and other relief as this Court may deem just and proper.

DATED: February 23, 2009.

          GERSON A. ZWEIFACH
          PAUL B. GAFFNEY
          AARON P. MAURER
          DAVID I. BERL
          WILLIAMS & CONNOLLY LLP

          ELLIOT M. OLSTEIN
          CARELLA, BYRNE, BAIN, GILFILLAN,
             CECCHI, STEWART & OLSTEIN, P.C.

          JEFFREY E. FAUCETTE
          HOWARD RICE NEMEROVSKI CANADY
             FALK & RABKIN
          A Professional Corporation

By: _____/s/_____
       JEFFREY E. FAUCETTE

Attorneys for Plaintiff MEDIMMUNE, LLC

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT     CV 08 5590