**\*E-FILED 07-26-2010\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEDIMMUNE, LLC, | No. C08-05590 JF (HRL) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENTS** |
| v. | |
| PDL BIOPHARMA, INC., | |
| Defendant. | **[Re: Docket No. 324]** |

In this lawsuit, plaintiff MedImmune, LLC (MedImmune) alleges, among other things, that defendant PDL Biopharma, Inc. (PDL) breached the "most favored licensee" (MFL) clause of the parties' 1997 license agreement. MedImmune seeks a declaration that it is entitled to the same license terms that PDL granted to Alexion Pharmaceuticals (Alexion), a non-party to these proceedings, as part of a litigation settlement.

Before the court is MedImmune's motion to compel unredacted versions of certain emails produced by PDL. The emails in question were exchanged in the course of PDL's settlement negotiations with Alexion. Several of the emails in question, which PDL claims are protected by the attorney-client privilege, were forwarded by PDL's lead negotiator to Alexion in the course of those settlement discussions. While there is no dispute that the attorney-client privilege applies, the parties disagree whether there has been a waiver. And, if there has been a waiver, the parties also dispute how broadly the waiver extends. Upon consideration of the

United States District Court

For the Northern District of California

1  moving and responding papers, as well as the arguments of counsel, this court grants the motion
2  in part and denies it in part.

3  Preliminarily, the parties dispute whether federal law governs (as MedImmune argues)
4  or whether state privilege law applies (as PDL contends). Inasmuch as this is a federal question
5  case with pendent state law claims, and because the discovery at issue appears to have some
6  (albeit, perhaps peripheral) bearing on patent claims, this court will apply federal common law
7  of privilege here. *See SNK Corp. of America v. Atlus Dream Entertainment Co., Ltd.*, 188
8  F.R.D. 566, 571 n.5 (N.D. Cal. 1999).

9  "The doctrine of waiver of the attorney-client privilege is rooted in notions of
10 fundamental fairness." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir.1996).
11 "Its principal purpose is to protect against the unfairness that would result from a privilege
12 holder selectively disclosing privileged communications to an adversary, revealing those that
13 support the cause while claiming the shelter of the privilege to avoid disclosing those that are
14 less favorable." *Id.* at 340-41. "In general, a party's voluntary disclosure of one or more
15 privileged communications between the party and his attorney waives the privilege as to all
16 communications between the party and his attorney on the same subject." *Starsight Telecast,*
17 *Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650, 653 (N.D. Cal. 1994)). Nonetheless, "the
18 disclosure of information resulting in the waiver of the attorney-client privilege constitutes
19 waiver 'only as to communications about the matter actually disclosed.'" *Chevron Corp. v.*
20 *Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992) (quoting *Weil v. Investment/Indicators,*
21 *Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir.1981)). There is no bright-line test for
22 determining the "subject matter" of a waiver. "A court ultimately must be guided by 'the
23 subject matter of the documents disclosed, balanced by the need to protect the frankness of the
24 client disclosure and to preclude unfair partial disclosures.'" *SNK Corp.*, 188 F.R.D. at 571
25 (quoting *Starsight Telecast, Inc.*, 158 F.R.D. at 653).

26 In the instant case, as noted above, MedImmune contends that the privilege was waived
27 when PDL's lead negotiator forwarded several privileged communications to Alexion in the
28 course of the PDL-Alexion settlement negotiations. Because the particular documents in

1  question have been filed under seal, their substantive contents will not be discussed here; and,
2  this court will describe them only at a high level of generality consistent with what has already
3  been revealed in the public record. There are essentially three groups of forwarded emails that,
4  in MedImmune's view, effected a waiver of the attorney-client privilege. In sum, these are
5  (1) an email from PDL's counsel listing nine deal points; (2) another email from PDL's counsel
6  discussing one deal point in particular; and (3) several emails which appear to discuss logistics
7  (i.e., scheduling issues and like matters).

8  With respect to the first email discussing nine deal points, PDL contends that it was
9  never intended to be a privileged communication. Thus, says PDL, its disclosure to Alexion
10 cannot be the basis for any waiver. Indeed, that explanation is corroborated by the record.
11 Notably, the email bears the legend: "Confidential: Subject to Parties' Confidentiality
12 Agreement and FRE 408"—text which litigants typically place on their settlement
13 communications to the opposing party. (*See* Gaffney Decl., Ex. 7 at p. 000417; s*ee also*
14 Gaffney Decl., Ex. 8 at p. 00541). Accordingly, this court agrees that the attorney-client
15 privilege does not apply to this particular email. Consequently, its disclosure to Alexion did not
16 result in a waiver.

17 As for the second and third categories of emails, PDL acknowledges that these were
18 intended to be confidential communications between PDL and its counsel, and there is no
19 dispute that the attorney-client privilege applies. PDL nevertheless contends that the disclosure
20 of these emails to Alexion (indisputably, PDL's adversary) did not result in a waiver because
21 the company (as opposed to its lead negotiator, an individual in high-level management) never
22 intended to waive the privilege. All indications, however, are that PDL's lead negotiator had
23 full authority to do what he did. PDL has not established any facts to the contrary. Moreover,
24 PDL evidently was aware since at least December 2009 that some of its privileged emails had
25 not only been disclosed to Alexion, but had also been disclosed to MedImmune by virtue of
26 Alexion's document production in response to MedImmune's subpoena. Yet, PDL apparently
27 did nothing more than redact some of the same emails in its own document production that
28

3

1 Alexion had already produced (in unredacted form) to MedImmune. Accordingly, the privilege
2 has been waived.

3 Nevertheless, this court concludes that the waiver does not extend beyond the emails
4 that have already been disclosed to MedImmune. MedImmune argues that the waiver
5 necessarily extends to all privileged communications concerning the PDL-Alexion settlement.
6 MedImmune further contends that such communications are likely to contain further evidence
7 as to the manner in which the PDL-Alexion settlement was structured—evidence that
8 MedImmune claims is critical to its case. This court appreciates that MedImmune certainly
9 would like to gather as much evidence as possible. But, as demonstrated by MedImmune's own
10 arguments, the documents that have already been produced by PDL and Alexion apparently are
11 rife with just the kind of evidence MedImmune says it needs. Guided by principles of fairness,
12 and having in mind the need to protect the frankness of client disclosures, as well as the need to
13 preclude unfair partial disclosures, this court concludes that the disclosure of one email
14 discussing a particular deal point[1] and several emails discussing logistical matters does not
15 justify a broad foray into all of PDL's privileged communications concerning the Alexion
16 settlement.

17 Finally, a word about the work product doctrine. At the very end of its motion,
18 MedImmune makes a passing request for an order compelling PDL to produce all relevant work
19 product. (*See* Mot. at 5). "Waiver of the attorney-client privilege, however, does not
20 necessarily lead to waiver of work product immunity." *SNK Corp.*, 188 F.R.D. at 571. In any
21 event, this court declines to order the production of the requested work product when that issue
22 was not properly briefed, much less argued, on the instant motion.

23 SO ORDERED.

24 Dated: July 26, 2010

25
26 _____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE
27

---

28 [1] At oral argument, PDL's counsel represented to the court that there are no other privileged communications concerning that particular deal point.

4

1. 5:08-cv-05590-JF Notice electronically mailed to:
2. Aaron P. Maurer     amaurer@wc.com
3. Aaron Y Huang     aaron.huang@weil.com, danielle.delorio@weil.com
4. Dana Johannes Finberg     darthur@sonnenschein.com, wballew@sonnenschein.com
5. David Isaac Berl     dberl@wc.com
6. David Isaac Gindler     DGindler@Irell.com, dlieberman@irell.com
7. Gerson Avery Zweifach     gzweifach@wc.com
8. Gregory Hull     greg.hull@weil.com, rebecca.kraus@weil.com
9. Jason George Sheasby , ESQ     JSheasby@Irell.com, ewong@irell.com, mdonovan@irell.com
10. Jeffrey E. Faucette     jfaucette@tcolaw.com, cdunbar@tcolaw.com, cwoodrich@tcolaw.com, mcianfrani@tcolaw.com
11. Jessamyn Sheli Berniker     jberniker@wc.com
12. Joshua H. Lerner     jlerner@durietangri.com, jcotton@durietangri.com, records@durietangri.com
13. Kate Dyer     kdyer@clarencedyer.com, achin@clarencedyer.com, adoust@clarencedyer.com
14. Matthew Kevin Wisinski     matthew.wisinski@leclairryan.com, karen.greer@leclairryan.com
15. Paul B. Gaffney     pgaffney@wc.com
16. Paullette Christine Deruelle     christine.deruelle@weil.com
17. Raymond Angelo LaMagna     rlamagna@irell.com, slee@irell.com
18. T. Ray Guy     ray.guy@weil.com
19. Thomas S Fletcher     TFletcher@wc.com, jmcnichols@wc.com, jrydstrom@wc.com
20. Vernon Michael Winters     vern.winters@weil.com, nettie.asiasi@weil.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.