| | |
|---|---|
| MATTHEW D. POWERS (Bar No. 104795) | DAVID I. GINDLER (Bar No. 117824) |
| matthew.powers@weil.com | dgindler@irell.com |
| VERNON M. WINTERS (Bar No. 130128) | JASON G. SHEASBY (Bar No. 205455 |
| vern.winters@weil.com | jsheasby@irell.com |
| GREGORY D. HULL (Bar No. 57367) | RAYMOND LAMAGNA (Bar No. 244821) |
| greg.hull@weil.com | rlamagna@irell.com |
| AARON Y. HUANG (Bar No. 261903) | IRELL & MANELLA LLP |
| aaron.huang@weil.com | 1800 Avenue of the Stars, Suite 900 |
| WEIL, GOTSHAL & MANGES LLP | Los Angeles, CA 90067-4276 |
| Silicon Valley Office | Telephone: (310) 277-1010 |
| 201 Redwood Shores Parkway | Facsimile: (310) 203-7199 |
| Redwood Shores, CA 94065 | |
| Telephone: (650) 802-3000 | |
| Facsimile: (650) 802-3100 | |

*Additional Counsel Listed After Signature Page*

Attorneys for Defendant,
PDL BIOPHARMA, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEDIMMUNE, LLC, | Case No. CV 08-5590 JF |
| Plaintiff, | **PDL BIOPHARMA, INC.'S MOTION FOR SUMMARY JUDGMENT ON MEDIMMUNE, LLC'S COUNT VII AND MEMORANDUM IN SUPPORT** |
| v. | |
| PDL BIOPHARMA, INC., | Date:       December 2, 2010 |
| Defendant. | Time:       10:30 a.m. |
| | Courtroom:  CT 3, 5th Floor |
| | Judge:      Honorable Judge Fogel |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1
II. MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE ....................... 2
III. SUMMARY JUDGMENT STANDARD ........................................................................... 4
IV. ARGUMENT ....................................................................................................................... 4
    A. MedImmune Has No Legal Basis To Recoup Royalties Paid to PDL .................... 4
        1. MedImmune Has No Basis To Recoup Royalties Under Federal Law .......................................................................................................... 5
        2. MedImmune Has No Basis For A Refund Of Royalties Under California Law ....................................................................................... 6
V. CONCLUSION .................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Asturiana de Zinc v. Canadian Electrolytic Zinc Ltd.,*
    1979 CarswellOnt 1595 (Ont. H. C., 1979) ................................................................. 5

*Brown v. Duchesne,*
    60 U.S. (19 How.) 183 (1857) ...................................................................................... 5

*Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.,*
    412 F.2d 577 (1st Cir. 1969) ......................................................................................... 5

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..................................................................................................... 4

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha,*
    825 F. Supp. 73 (D. Del. 1993) .................................................................................... 5

*McGuire v. Columbia Broad. Sys., Inc.,*
    399 F.2d 902 (9th Cir. 1968) ........................................................................................ 4

*Packard Instrument Co., Inc. v. Beckman Instruments, Inc.,*
    346 F. Supp. 408 (N.D. Ill. 1972) ................................................................................ 5

*Stein Assocs., Inc. v. Heat & Control, Inc.,*
    748 F.2d 653 (Fed. Cir. 1984) ...................................................................................... 5

*Voda v. Cordis Corp.,*
    476 F.3d 887 (Fed. Cir. 2007) ................................................................................. 5, 6

*Wal-Noon Corp. v. Hill,*
    45 Cal. App. 3d 605 (1975) ......................................................................................... 6

*Zila, Inc. v. Tinnell,*
    502 F.3d 1014 (9th Cir. 2007) .................................................................................. 5, 6

**OTHER AUTHORITIES**

*Restatement of Restitution § 60* .............................................................................................. 6

**RULES**

*Fed. R. Civ. P. 56* .................................................................................................................. 4

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 2, 2010, at 10:30 a.m., in the courtroom of the Honorable Jeremy Fogel, 280 South First Street, San Jose, California, defendant PDL BioPharma, Inc. ("PDL") will, and hereby does, move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment in favor of PDL on Count VII of the Counterclaims-in-Reply filed by plaintiff MedImmune, LLC ("MedImmune").

The Motion is based on the pleadings, the Memorandum of Points and Authorities following herein; the Declaration of Raymond LaMagna in support of the Motion and corresponding exhibits, the Proposed Order submitted herewith, and such other and further papers and arguments as may be submitted to the Court in connection with the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

In Count VII of its Counterclaims-in-Reply, MedImmune seeks a declaratory judgment that it is entitled to recoup royalties it previously paid in connection with foreign sales of Synagis *for over a nine year period*, commencing on the filing of opposition proceedings against PDL's European Patent No. 0 682 040 patent (the "'040 patent") in the European Patent Office ("EPO") *on May 23, 2000*. Because there is no legal basis whatsoever for MedImmune's claim, PDL is entitled to summary judgment in its favor on Count VII.

MedImmune entered into a license with PDL in 1997 (the "License") giving MedImmune rights to, among other things, PDL's '040 patent. The License provides that MedImmune must pay royalties "until the last date on which there is a Valid Claim," which is defined as "any claim in any issued patent included in the PDL Patent Rights which has not been disclaimed or held unenforceable or invalid by a governmental agency or court of competent jurisdiction ***by a decision beyond right of review***." (Ex. A, License at §§ 3.03(a), 1.08 (emphasis added).[1]) Thus, under the clear terms of the License, MedImmune must continue to pay royalties on an infringed

---

[1] Citations in the format of "Ex. __" are to the exhibits accompanying the October 22, 2010, Declaration of Raymond LaMagna filed in support of this motion.

PDL'S MOTION FOR SUMMARY JUDGMENT
ON MEDIMMUNE'S COUNT VII                         1                              Case No. C 08-5590 JF

1  patent unless and until a competent authority finds that the patent is invalid "by a decision beyond
2  right of review." In 2000, opposition proceedings were brought by a number of companies,
3  including MedImmune, in the EPO to revoke PDL's '040 patent. MedImmune, however, never
4  repudiated its License. Instead, for almost a decade, MedImmune continued to pay royalties to
5  PDL without protest or reservation of rights—and continued to received the benefits of the
6  License. PDL, in reliance on the contract terms, received and booked the royalty revenue,
7  reported the revenue and paid taxes on it, and utilized the revenue in its operations. Now
8  MedImmune seeks to use Count VII to rewrite the terms of the License that it freely entered into
9  and benefitted from, shifting all the risk to PDL and keeping all the rewards for itself. The law
10 does not allow this.

11   MedImmune has never articulated a basis for Count VII under California law, nor has
12 PDL been able to identify one. The License expectations are clear: MedImmune is required to
13 pay royalties to PDL unless and until PDL's patents are invalidated "by a decision beyond right
14 of review." (Ex. A, License at § 1.08.) The License does not provide for a refund. Under
15 governing California law, there is no legal basis for MedImmune's claim—California law does
16 not permit rewriting the express and unambiguous terms of a valid license contract.

17   For these reasons, MedImmune's Count VII utterly fails as a matter of law—there is no
18 legal basis for MedImmune's claim. PDL is therefore entitled to summary judgment in its favor
19 on Count VII. PDL respectfully requests that the Court grant its Motion.

20 **II.  MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

21   PDL relies on the following facts in support of this motion, which PDL treats as
22 undisputed for purposes of this motion only.

23   In 1997, PDL and MedImmune entered into a Patent License Agreement, giving
24 MedImmune rights to PDL's Queen patents, including the '040 patent, in exchange for payments,
25 including royalties. (Ex. A, License at §§ 1.06, 2, 3, and Exhibit A thereto.)

26   In its Counterclaims-In-Reply to PDL's First Amended Counterclaims, MedImmune
27 asserts a claim for Declaratory Judgment of Contractual Rights (Count VII) seeking "a
28 declaratory judgment that it is entitled to recoup from PDL the royalties paid to by [sic]

1  MedImmune on foreign sales of Synagis for the period postdating May 23, 2000." (D.I. 472 at
2  ¶ 130.) By MedImmune's account, it has paid more than $42 million to PDL in royalties based
3  on the foreign sales of Synagis. (*Id.* at ¶ 128.) MedImmune and other companies initiated
4  opposition proceedings in the EPO to PDL's '040 patent on May 23, 2000. (Ex. B, Notice of
5  Opposition to European Patent.)

6  In Interrogatory No. 29, PDL requested that MedImmune state "the complete basis for
7  your Count VII Declaratory Judgment of Contractual Rights." (Ex. C, Plaintiff MedImmune's
8  Supplemental Responses and Objections to PDL's Interrogatories Nos. 24, 26, 29 & 30 at
9  Interrog. No. 29.) MedImmune initially refused to provide any substantive response to PDL's
10 inquiry, forcing PDL to bring a Motion to Compel. (D.I. 614.) MedImmune provided the
11 following response to Interrogatory No. 29 after PDL filed its Motion to Compel:

> PDL has contended that it is entitled to royalties on MedImmune's sales of Synagis® outside the United States because PDL contends that sales of Synagis® infringe claims 1-5 of European Patent No. 0 682 040.
>
> PDL learned that MedImmune believed the '040 patent did not entitle PDL to royalties on sales of Synagis® through MedImmune's participation in opposition proceedings before the European Patent Office. PDL has known since on or about May 18, 2000 that MedImmune believed that the '040 patent should be revoked in its entirety. See PDL-M0044590-609.
>
> In response to the opposition proceedings in which MedImmune participated, the European Patent Office revoked the '040 Patent in its entirety. See PDL-M0048483-85; PDL-M0048498-519; PDL-M0049186-218.
>
> Between May 18, 2010 and the final decision of the European Patent Office's Technical Board of Appeal, MedImmune paid to PDL royalties on ex-U.S. sales of Synagis®

23 (Ex. C at 7:28-8:11 [Interrog. No. 29].)

24 MedImmune continued to pay royalties to PDL throughout the period of the challenge and
25 never informed PDL that it was paying royalties for sales of Synagis outside of the United States
26 under protest, contingent upon the outcome of the proceedings before the EPO, or subject to any
27 reservation of rights whatsoever. (*See id.* at 7:22-9:6 [Interrog. No. 30].)
28 On April 1, 2010, MedImmune *for the first time* claimed that it was entitled to a full

1  refund of royalties paid to PDL on foreign sales of Synagis in its Reply to First Amended
2  Counterclaims of PDL and Counterclaims-in-Reply. (D.I. 472 at ¶¶ 129-30.)

3  The License Agreement provides that MedImmune must pay royalties "until the last date
4  on which there is a Valid Claim," which is defined as "any claim in any issued patent included in
5  the PDL Patent Rights which has not been disclaimed or held unenforceable or invalid by a
6  governmental agency or court of competent jurisdiction ***by a decision beyond right of review***."
7  (Ex. A, License at §§ 3.03(a), 1.08 (emphasis added).) The License also expressly disclaims any
8  warranties or representations of validity. (*Id.* at §§ 5.02, 5.03.)

9  **III.  SUMMARY JUDGMENT STANDARD**

10  A plaintiff may move for summary judgment on all or part of the claim where "there is no
11  genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter
12  of law." Fed. R. Civ. P. 56(a), (c)(2). "[T]he burden on the moving party may be discharged by
13  'showing'—that is, pointing out to the district court—that there is an absence of evidence to
14  support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[A]n
15  opposing party may not rely merely on allegations or denials in its own pleading; rather, its
16  response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P.
17  56(e)(2). "[T]he showing of a 'genuine issue for trial' is predicated upon the existence of a legal
18  theory which remains viable under the asserted version of the facts, and which would entitle the
19  party opposing the motion (assuming his version to be true) to a judgment as a matter of law."
20  *McGuire v. Columbia Broad. Sys., Inc.*, 399 F.2d 902, 905 (9th Cir. 1968).

21  Here, there is no legal basis to support MedImmune's claim. As a matter of law, PDL is
22  entitled to have the claim against it decided on summary judgment in PDL's favor. Likewise,
23  there is no genuine issue as to any material fact with respect to whether MedImmune can recoup
24  royalties paid to PDL after the initiation of opposition proceeding in the EPO: It cannot. PDL is
25  therefore equally entitled to judgment as a matter of law on Count VII.

26  **IV.  ARGUMENT**

27  **A.  MedImmune Has No Legal Basis To Recoup Royalties Paid to PDL**

28  MedImmune claims that "[a] licensee is entitled to recover royalties paid during a

successful challenge to the validity of a patent." (D.I. 472 at ¶ 129.) MedImmune is wrong.

### 1. MedImmune Has No Basis To Recoup Royalties Under Federal Law

MedImmune appears to rely on federal law to support its claim for reimbursement of royalties paid on account of the '040 patent during the period postdating commencement of opposition proceedings in the EPO. To the extent MedImmune relies on federal law for its claim, that reliance is misplaced. Federal law does not preempt state contract law with respect to a license to a non-U.S. patent. Federal patent law and policy only apply to U.S. patents and can only supersede state contract law with respect to that subject matter.[2]

Federal patent law "only displaces state contract law with respect to royalty obligations related to federally-bestowed patent rights." *Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1024 (9th Cir. 2007).[3] U.S. patent laws "'do not, and were not intended to, operate beyond the limits of the United States.'" *Voda v. Cordis Corp.*, 476 F.3d 887, 902 (Fed. Cir. 2007), quoting *Brown v. Duchesne*, 60 U.S. (19 How.) 183 (1857); *see also Stein Assocs., Inc. v. Heat & Control, Inc.*, 748 F.2d 653, 658 (Fed. Cir. 1984) ("Only a British court, applying British law, can determine validity and infringement of British patents."); *Asturiana de Zinc v. Canadian Electrolytic Zinc Ltd.*, 1979 CarswellOnt 1595 (Ont. H. C., 1979) (*Lear* "is, of course, not applicable in [Canada] and has no effect so far as changing the law [in Canada] is concerned.").[4]

The United States is a party to the Paris Convention for the Protection of Industrial Property, the Patent Cooperation Treaty and the Agreement on the Trade-Related Aspects of Intellectual Property Rights, all of which affirm the *independence* of each country's patent

---

[2] We note that a licensee is not entitled to a refund of royalties paid after the filing of a lawsuit challenging the validity of a U.S. patent. Because Count VII, as pleaded, only relates to royalties paid on account of a foreign patent, there is no basis to invoke any principle of federal patent law.

[3] In *Zila*, the Ninth Circuit held that the strictures of the *Brulotte* doctrine of federal patent law that limited state contracting rights did not and could not apply to contracts for foreign patents, where the preemptive effect of federal law has no effect. *Id.* at 1023-24.

[4] *See also Packard Instrument Co., Inc. v. Beckman Instruments, Inc.*, 346 F. Supp. 408, 410 (N.D. Ill. 1972) ("[T]he determination by this court that a foreign patent is invalid, *i.e.*, that the act of an agency of a foreign government is invalid, would raise serious questions of comity."); *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 825 F. Supp. 73, 76 (D. Del. 1993) (following Federal Circuit precedent that "only a foreign country can determine the validity and *infringement* of the patents it issues"); *Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.*, 412 F.2d 577, 579 (1st Cir. 1969) (noting that under principles of comity, U.S. courts should not adjudge the validity of foreign patents).

systems. *Voda*, 476 F.3d at 898-99. "A patent right is limited by the metes and bounds of the jurisdictional territory that granted the right to exclude." *Id.* at 901. "The fact that the asset is a foreign patent, as opposed to foreign real estate or other real property held outside the country, does nothing to change the propriety and competency of state contract law to dispose of it." *Zila, Inc.*, 502 F.3d at 1024. Federal patent policy, and its concern over abuse of federally-bestowed monopoly power, is simply not implicated by a license to a foreign patent, which is a separate and independent asset from a U.S. patent on the same invention. *See id.* at 1023-24. Thus, with respect to licenses to foreign patents, state contract law is not and cannot be preempted by federal patent law as a result of the Supremacy Clause. *Id*.

### 2. MedImmune Has No Basis For A Refund Of Royalties Under California Law

MedImmune has no "refund" claim under California law, nor has it pled one. "[W]here the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability and to withdraw from one party benefits for which he has bargained and to which he is entitled." *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975). Affording equitable relief to undo required performance of a valid contract "would effectively deprive [PDL] of part of the bargained-for consideration . . . ." *Id*. "[A] court of equity . . . may not create new substantive rights under the guise of doing equity." *Id.* (internal quotations omitted). Money paid as due on a valid contract, absent breach, is not subject to refund. *See* Restatement of Restitution § 60 ("A person who has performed a duty owed to another, enforceable at law or in equity, is not entitled to restitution from the other for such performance."). MedImmune's claim for recoupment is not pleaded as a remedy for a breach, nor is it based on a formation defect. Thus, under California law, MedImmune is not entitled to a refund of the royalties paid to MedImmune as expressly required by the License.

The plain language of the License states that MedImmune will continue to pay royalties "until the last date on which there is a Valid Claim," which is defined as "any claim in any issued patent included in the PDL Patent Rights which has not been disclaimed or held unenforceable or

invalid by a governmental agency or court of competent jurisdiction ***by a decision beyond right of review***." (Ex. A, License at §§ 3.03(a), 1.08.) There is no right to a refund under the contract, and PDL made no warranties or representations as to validity. (*Id.* at §§ 5.02, 5.03.) As Section 1.08 of the parties' License establishes, PDL and MedImmune clearly contemplated precisely this situation—the obligation to pay royalties on a patent that is ultimately found to be invalid—and allocated the risk to MedImmune. This was part of the bargained for consideration, and it should be enforced.

California contract law does not permit MedImmune to hedge its bets by continuing to pay royalties to PDL (and receive the benefit of a license) for nearly ten years while secretly planning to seek a refund of those royalties in the event that the EPO were to revoke the '040 patent. MedImmune cannot have it both ways. During EPO opposition proceedings, MedImmune opted to continue to pay royalties without protest, and PDL received and booked the royalty revenue, reported the revenue and paid taxes on it, and utilized the revenue in its operations in reliance on the contract terms. Under the parties' License, MedImmune could have terminated the License and stopped paying royalties at any time on 30 days notice during the EPO opposition. (Ex. A, License at § 7.02(a).) MedImmune did not. Under California law, MedImmune is bound to the terms of its contract. California law does not support the inequitable result MedImmune now seeks. As a result, its claim should be decided as a matter of summary judgment in favor of PDL and against MedImmune.

## V. CONCLUSION

MedImmune has no legal basis for Count VII seeking a declaratory judgment that it is entitled to a refund of any royalties it paid PDL on foreign sales of Synagis. The License expressly requires the payments that MedImmune made. California law provides no basis to seek a refund of those required payments, and federal law does not preempt California law with respect to royalties paid on account of a license to a foreign patent. Accordingly, PDL respectfully requests that the Court grant summary judgment in PDL's favor on Count VII.

| | | |
|---|---|---|
| 1 | Dated: October 22, 2010 | Respectfully submitted, |
| 2 | | WEIL, GOTSHAL & MANGES LLP<br>IRELL & MANELLA, LLP |
| 3 | | |
| 4 | | By: /s/ Raymond A. LaMagna<br>Raymond A. LaMagna<br>Attorneys for Defendant and |
| 5 | | Counterclaim Plaintiff<br>PDL BioPharma, Inc. |
| 6 | | |
| 7 | | *additional counsel*: |
| 8 | | T. RAY GUY (admitted *pro hac vice*)<br>ray.guy@weil.com |
| 9 | | WEIL, GOTSHAL & MANGES LLP<br>200 Crescent Court, Suite 300<br>Dallas, TX 75201 |
| 10 | | Telephone: (214) 746-7700<br>Facsimile: (214) 746-7777 |
| 11 | | |
| 12 | | ELIZABETH S. WEISWASSER *(admitted pro hac vice)*<br>elizabeth.weiswasser@weil.com |
| 13 | | PETER SANDEL (admitted *pro hac vice*)<br>peter.sandel@weil.com |
| 14 | | REBECCA FETT (admitted *pro hac vice*)<br>rebecca.fett@weil.com |
| 15 | | WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue |
| 16 | | New York, NY 10153<br>Telephone: (212) 310-8000 |
| 17 | | Facsimile: (212) 310-8007 |
| 18 | | P. CHRISTINE DERUELLE (*pro hac vice*)<br>christine.deruelle@weil.com |
| 19 | | WEIL, GOTSHAL & MANGES LLP<br>1395 Brickell Avenue, Suite 1200 |
| 20 | | Miami, FL 33131<br>Telephone: (305) 577-3100 |
| 21 | | Facsimile: (305) 374-7159 |
| 22 | | Attorneys for Defendant<br>PDL BioPharma, Inc. |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |